STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellant (Respondent),

v.

Clarence W. BREWBAKER, Appellee (Petitioner).

No. 98–15.

Supreme Court of Wyoming.

Feb. 18, 1999.

Rehearing Denied March 25, 1999.

William U. Hill, Attorney General; John W. Renneisen; Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, Cheyenne, Wyoming, Representing Appellant.

F. Gaston Gosar of Nicholas Law Office, LLC, Riverton, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

Appellant, Wyoming Workers' Compensation Division (the Division), claims the district court erred in reversing the hearing examiner's denial of benefits to appellee, Clarence W. Brewbaker (Brewbaker). The hearing examiner determined that the work activities leading to Brewbaker's heart attack were not "unusual * * * or abnormal" as required by Wyo. Stat. § 27–14–603(b) (1997). Finding no evidence to support the hearing examiner's conclusion, we affirm the order of the district court.

## I. ISSUES

The Division presents the following issue for review:

A. Was the Hearing Examiner's denial of benefits supported by substantial evidence and within his discretion?

Brewbaker phrases the issue as:

Did the district court err when it reversed the hearing examiner, concluding that his decision was contrary to law, arbi-

* Chief Justice at time of oral argument; retired November 2, 1998.

trary, capricious, and unsupported by substantial evidence? Was the hearing examiner's decision to deny benefits for Mr. Brewbaker's work related heart attack contrary to law and, therefore, arbitrary, capricious, and unsupported by substantial evidence?

## II. FACTS

Brewbaker worked for two years as a truck driver for Foster Construction Company, Inc. (Foster). Due to his experience as a welder in the oil field and the lack of driving opportunities in the winter, Brewbaker agreed to temporarily perform welding tasks for Foster. In January 1996, Brewbaker and two other employees began repairing a large rock crusher used by Foster in its construction business.

On March 12, 1996, Brewbaker and a co-worker were engaged in the repair of the "grizzly" on the rock crusher, the main hopper at the base of the crusher. The grizzly consists of steel plates welded together to form a funnel-shaped rectangle, measuring approximately ten feet by twelve feet. When Brewbaker arrived at work at about 7:00 a.m., the temperature was well below freezing with the wind gusting from fifteen to twenty miles per hour. Brewbaker and his co-worker began the project by making a "rough cut" on each steel plate, which individually weighed approximately 300 pounds. The two men then loaded the plates on a front end loader to move them into position for reattachment to the grizzly.

The grizzly was located in the middle of the Foster yard, unprotected from the weather. Instead of scaffolding, a large rock pile had been erected to provide support while the plates were fitted to the grizzly at a forty-five degree angle. The men unloaded the plates and laid them on the rock pile. Reattachment to the grizzly began with the plate being "scribed" to ensure a proper fit. While both men squatted against the rocks, they lifted the steel plate to the forty-five degree angle. Brewbaker used one arm to mark the excess steel; the plate was then lowered and the excess steel removed.

The process continued with the two men again lifting the plate. Brewbaker supported his side with his body, arm, and head. Using his free arm, Brewbaker then tack welded the plate into position. After tack welding all four sides, the co-worker went back to another project while Brewbaker completed the welding of the circumference of the plate. Once finished, the scribing and welding process began for the next plate.

After working for approximately three hours, Brewbaker tacked the third plate into place. While welding the circumference, he began to feel pains in his chest. He tumbled off the rock pile and called for help. Within thirty minutes, Brewbaker was examined by Dr. David Steger in the emergency room at Riverton Memorial Hospital.

From the emergency room, Brewbaker was transferred to the intensive care unit, where he was examined by Dr. John Reckling and diagnosed with "[a]typical chest pain." A series of tests revealed Brewbaker's condition as a "myocardial infarction"—a heart attack. He was referred to a cardiologist, Dr. Robert Novick, who performed an angioplasty on March 18, 1996.

Although the report of injury was timely filed, the Division denied benefits on April 3, 1996, citing Wyo. Stat. § 27-14-603(b). The evidence at the subsequent hearing consisted of Brewbaker's testimony and documentary evidence, including Brewbaker's medical records and the deposition testimony of Dr. Reckling. The hearing examiner found that Brewbaker proved that his activity at work had caused his heart attack, but that he failed to prove the activity was "clearly unusual to or abnormal for employees in that particular employment * * *." Wyo. Stat. § 27-14-603(b)(ii).

Brewbaker filed a petition for review in the district court. The district court reversed the order denying benefits, finding that the hearing examiner's decision was unsupported by any record evidence. This timely appeal followed.

## III. STANDARD OF REVIEW

■ Wyo. Stat. § 16-3-114(c) (1997) prescribes the scope of appellate review for agency decisions. The reviewing court shall:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * *

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. § 16–3–114(c)(ii)(A) and (E). Our review accords no special deference to the decision of the district court; the case is considered as if it came to us directly from the agency. *State ex rel. Wyoming Workers' Compensation Div. v. Harris*, 931 P.2d 255, 258 (Wyo.1997).

■ While Brewbaker retains the burden of establishing the insufficiency of the evidence, the Division has "the initial burden of persuasion to show the district court made an error of law when it applied an improper standard or rule or reweighed the evidence and substituted its judgment for that of the agency." *Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 876 (Wyo.1994). It must also demonstrate that the administrative agency's decision was justified by evidence in the record. *Id.* We examine the entire record to determine if the agency's findings are supported by substantial evidence. *Id.* at 877.

■ " 'Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of an agency.' " *Harris*, 931 P.2d at 258 (*quoting Stuckey v. State ex rel. Wyoming Workers' Compensation Div.*, 890 P.2d 1097, 1099 (Wyo.1995)). To establish a fact, more than just a mere scintilla of evidence or a suspicion is required. *Harris*, 931 P.2d at 258. However, the agency's factual findings will be set aside only if clearly contrary to the overwhelming weight of the evidence. *Id.*

## IV. DISCUSSION

The successful applicant for worker's compensation benefits for a heart attack must prove every requirement enumerated in Wyo. Stat. § 27–14–603(b):

Benefits for employment-related coronary conditions except those directly and solely caused by an injury, are not payable unless the employee establishes by competent medical authority that:

(i) There is a direct causal connection between the condition under which the work was performed and the cardiac condition; and

(ii) The causative exertion occurs during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment, irrespective of whether the employment stress is unusual to or abnormal for the individual employee; and

(iii) The acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion.

There is no question that Brewbaker fulfilled the requirements of subsections (i) and (iii). The only issue here is subsection (ii): whether the hearing examiner could reasonably conclude that Brewbaker failed to establish that his employment activities preceding the injury involved stress which was clearly unusual or abnormal for that employment. "This is an objective test and invokes the usual employment activities; it does not focus on the activities or characteristics of an individual employee." *Harris*, 931 P.2d at 259.

■ Brewbaker's testimony is the only record evidence relating to the nature of the employment stress preceding his heart attack. Although he admitted his work normally involved tasks requiring "heavy labor," Brewbaker consistently maintained that the combination of the weather conditions and the difficulty of this specific project created a work situation both unusual and abnormal for welding employment. The Division submitted no evidence to challenge or contradict this testimony.

Instead, the Division now contends that Brewbaker's questionable credibility is the key justification for the hearing examiner's determination. This argument is singularly unpersuasive. In its efforts to create a credibility issue, the Division attempts to show a

conflict between Brewbaker's statements to his physicians and his testimony at the hearing. Suffice it to say that these alleged contradictions are produced only through an incomplete and unfair characterization of the evidence. A careful review of the entire record negates any material conflict in Brewbaker's statements to his treating physicians and/or in his testimony. Indeed, the only evidence before the hearing examiner was that the project was over and above the range of "heavy labor" normally required for a welding project.

Citing to *Robles*, 882 P.2d at 876, the Division argues that because Brewbaker's testimony went uncorroborated by another witness, the hearing examiner reasonably could find his testimony incredible without the presentation of contradictory evidence. The Division's reliance on *Robles* is misplaced. There, we clearly stated that the Division must "demonstrate the administrative agency decision was justified by evidence in the record." *Id.* at 876. There is simply *no* evidence to support the Division's argument that the hearing examiner found Brewbaker's basic facts incredible, and no evidence to support the hearing examiner's determination that lifting 300 pound steel plates in freezing weather for three hours is usual or normal stress in the welding profession. In other words, the hearing examiner's conclusion is contrary to *all* evidence.

## V.  CONCLUSION

The hearing examiner's denial of benefits was clearly contrary to the great weight of the evidence. The district court's order reversing and remanding the case to the Office of Administrative Hearings is affirmed.